IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| DIANE LLOYD ROBINSON, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> MICHAEL J. ASTRUE, ) <br> Commissioner of Social Security, ) <br> ) <br> Defendant. ) | **MEMORANDUM OPINION AND RECOMMENDATION** <br><br> 1:07CV871 |

Plaintiff, Diane Robinson, brought this action pursuant to Section 205(g) of the Social Security Act, as amended (42 U.S.C. § 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claim for Disability Insurance Benefits under Title II of the Social Security Act (the "Act"). The parties have filed cross-motions for judgment, and the administrative record has been certified to the court for review.

## Procedural History

Plaintiff filed an application for Disability Insurance Benefits ("DIB") on July 6, 2004, (protective filing date, June 17, 2004), alleging a disability onset date of

July 10, 1996.[1]  Tr. 15, 75.  The application was denied initially and upon reconsideration.  Tr. 30, 50.  Plaintiff requested a hearing de novo before an Administrative Law Judge (ALJ).  Tr. 62.  Present at the hearing, held on May 10, 2007, were Plaintiff and her attorney.  Tr. 15.

By decision dated June 1, 2007, the ALJ determined that Plaintiff was not disabled within the meaning of the Act.  Tr. 15-21.  On September 14, 2007, the Appeals Council denied Plaintiff's request for review of the ALJ's decision, Tr. 4-6, thereby making the ALJ's determination the Commissioner's final decision for purposes of judicial review.

In deciding that Plaintiff is not entitled to benefits, the ALJ made the following findings, which have been adopted by the Commissioner:

> 1.    The claimant last met the insured status requirements of the Social Security Act on June 30, 1999.
>
> 2.    The claimant did not engage in substantial gainful activity during the period from March 2, 1998, through her date last insured, June 30, 1999.  (20 CFR 404.1520(b), 404.1571 *et seq*.).
>
> 3.    Through the date last insured, the claimant had the following severe impairments:  hypertension and alcohol addiction.  (20 CFR 404.1520(c)).

---

[1] Plaintiff previously filed applications for DIB in 1994, October 1996, and January 1998, alleging disability onset dates of March 1, 1994, July 9, 1996, and July 10, 1996, respectively.  Tr. 75, 81, 93, 131.  It does not appear that these claims were pursued beyond their initial denial, nor were they reopened with the instant application.  The final denial on the previous applications was entered on March 1, 1998.  Accordingly, as found by the ALJ, the prior determination that Plaintiff was not disabled through March 1, 1998, remains in full effect, and Plaintiff cannot be found disabled through that date.  Accordingly, the earliest onset date considered by the ALJ was March 2, 1998.  Tr. 16.

> 4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526).

Tr. 17.

He continued:

> 5. After careful consideration of the entire record, the undersigned finds that through the date last insured, the claimant had the residual functional capacity to perform medium exertional level work. However, due to the effects of alcohol abuse, the claimant is limited to work with no detailed instructions.

Tr. 18.

> 6. Through the date last insured, the claimant's past relevant work as a laundry assistant did not require the performance of work-related activities precluded by the claimant's residual functional capacity.

Tr. 20.

Accordingly, the ALJ decided that Plaintiff was not under a disability, as defined in the Act, at any time from March 2, 1998, through June 30, 1999, the date last insured. Tr. 21.

**Analysis**

In her brief before the court, Plaintiff argues that the Commissioner's findings are in error because (1) the ALJ's failure to include Plaintiff's small right occipital lobe infarct or small vessel disease, postural dizziness, peripheral neuropathy, anxiety, panic attacks, and depression as "severe" impairments is unsupported by substantial evidence; (2) the ALJ failed to assess Plaintiff's medically determinable

3

mental impairments in accordance with the "special technique" mandated by 20 C.F.R. § 404.1520a; and (3) the ALJ's decision is not supported by substantial evidence because he failed to consider all relevant evidence in the record, even that inconsistent with his decision.[2] The Commissioner contends otherwise and urges that substantial evidence supports the determination that Plaintiff was not disabled.

Scope of Review

The Act provides that, for "eligible"[3] individuals, benefits shall be available to those who are "under a disability," defined in the Act as the inability:

> to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]

42 U.S.C.§ 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, the Social Security Administration ("SSA"), by regulation, has reduced the statutory definition of "disability" to a series of five sequential questions (the "sequential evaluation process"). An examiner must determine whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which

---

[2] Plaintiff also complains that the ALJ's finding at step three of the sequential evaluation process was in error, and that the ALJ should have considered all of Plaintiff's impairments when evaluating whether a Listing was met, particularly Listing 12.02. Pl.'s Br. at 5. Because, however, Plaintiff failed to develop this argument, the court will not address it.

[3] Eligibility requirements for DIB are found at 42 U.S.C. § 423(a)(1).

4

equals an illness contained in the Act's listing of impairments, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing any other work.  20 C.F.R. § 404.1520 (2009).

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied.  Richardson v. Perales, 402 U.S. 389 (1971); Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005).  Consequently, the Act precludes a de novo review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence.  See Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (citing Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996)).  Substantial evidence is:

> "evidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.  If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'"

Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).

Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that this conclusion is rational.  Thomas v. Celebrezze, 331 F.2d 541, 543 (4th Cir. 1964).  If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed.  Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

Issues

1. Severe Impairments

Plaintiff contends that the ALJ erred at step two of the sequential evaluation process by failing to include as "severe" Plaintiff's claimed impairments of small right occipital lobe infarct or small vessel disease of the brain, postural dizziness and vertigo, anxiety, panic attacks and depression.[4] Pl.'s Br. at 6. Plaintiff argues that the medical evidence in the record requires a conclusion that these impairments are greater than "slight abnormalities" that will have more than a "minimal impact" on her ability to perform basic work activities. Id. The court disagrees.

Under the regulations, an impairment is "severe" when it "significantly limits" a claimant's physical or mental abilities to perform basic work activities. See 20 C.F.R. § 404.1521(a). Mental "basic work activities" include understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting. Section 404.1521(b).

The Fourth Circuit has held that in order to find an impairment non-severe, the impairment must be "a *slight abnormality* which has such a *minimal effect* on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." Evans v. Heckler, 734

---

[4] Plaintiff also stated that the ALJ erred in failing to find Plaintiff's claimed peripheral neuropathy as a severe impairment. Pl.'s Br. 6. Again, because Plaintiff failed to develop any argument with respect to this claimed impairment, the court will not address it.

6

F.2d 1012, 1014 (4th Cir. 1984) (emphasis in original) (citations omitted).  Plaintiff bears the burden of proving the severity of her impairments.  See 20 C.F.R. § 404.1512(a); Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992).

During the severity assessment, the adjudicator is required to make "a careful evaluation of the medical findings that describe the impairment(s) (i.e., the objective medical evidence and any impairment-related symptoms)."  SSR 96-3p, 61 Fed. Reg. at 34469.  Here, the record is devoid of any evidence, either objective or subjective, demonstrating that Plaintiff suffered any functional limitations arising from these claimed impairments during the period at issue, from March 2, 1998, to June 30, 1999, ("Insured Period").  See 20 C.F.R. § 404.1512(c) (a claimant must provide medical evidence that she had an impairment and how severe it was). Therefore, substantial evidence supports the ALJ's finding.

As the Commissioner points out, the evidence in the record for the Insured Period is very limited.  During that time, there is no record that Plaintiff sought any treatment for the impairments that Plaintiff now claims were "severe."  See Mickles v. Shalala, 29 F.3d 918, 930 (4th Cir. 1994) ("[A]n unexplained inconsistency between the claimants's characterization of the severity of her condition and the treatment she sought to alleviate that condition is highly probative of the claimant's credibility.").  Indeed, the medical records reveal that during this time, Plaintiff's medical treatment was limited to two emergency room visits for complaints of severe

7

toothache, during which it was noted that Plaintiff's blood pressure was elevated. Tr. 539, 542.

Depression, Panic Attacks, and Anxiety

Prior to the Insured Period, there are scattered references to depression in the medical records. In September 1996, Plaintiff's neurologist reported Plaintiff being cheerful, yet, for unknown reasons, he gave her samples of Effexor, an antidepressant. Tr. 680. A month later, Plaintiff reported a *past history* of depression, but acknowledged she had sought no formal treatment. Tr. 679. In September 1997, Plaintiff was involuntarily committed to the hospital for alcohol detoxification.[5] Tr. 567-68. Upon admission, Plaintiff denied any history of any psychiatric disorder, including, specifically, panic attacks. Tr. 567. Upon discharge, Plaintiff's physician reported "showed no evidence of major mood disorder." Tr. 566. Similarly, in October 1997 she also reported that she had no longstanding mental disorders, Tr. 552, and refused psychological treatment. Id. In November 1997, Plaintiff sought treatment at an urgent care clinic and reported that she was "significantly depressed and anxious and nervous over her children," but that she acknowledged that she had been admitted to the hospital the month prior for alcohol detoxification. Tr. 693. The physicians' assistant that treated her made no diagnosis of depression or anxiety, nor did she offer treatment. Tr. 694.

---

[5] Plaintiff was admitted to the hospital for alcohol detoxification in May 1997, June 1997, September 1997, October 1997, and February 1998. See Tr. 545, 551, 566, 579, 593, 628.

8

Dizziness and Vertigo

According to the medical records, prior to the Insured Period, Plaintiff periodically complained of episodic bouts of dizziness which she had suffered since she was sixteen. Tr. 673-86. Yet, Plaintiff's physical and neurological examinations repeatedly were mostly normal. Id. Indeed, Plaintiff's neurologist characterized her as having few clinical symptoms and no "apparent serious residua" arising from her complaints. Tr. 684. In September 1996, Plaintiff reported that low doses of Valium continued to help significantly with her dizziness. Tr. 680. In October 1996, Plaintiff reported to her neurologist that she was "hoping to get on disability," although her physician thought that unlikely to occur given that her vertigo was completely "aborted" with medication, making it reasonable, in his opinion, that she could work. Tr. 679. Cf. Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986) (if symptoms are, or can be, reasonably controlled by medication, they may not be considered disabling under the Act). A neurological examination in December 1997, the last prior to the Insured Period, showed motor and sensory testing were intact throughout including vibration and position, and normal reflexes, station and gait. Tr. 676-77. Plaintiff's next visit to the neurologist was in July 1999, soon after the expiration of the Insured Period. At that time, Plaintiff had a flat affect and cried during her appointment, but again her neurologic examination was normal, with cranial nerves and finger-nose-finger intact, normal muscle tone and strength throughout, normal sensation and gait, and no nuchal rigidity. Tr. 675.

9

Abnormal Brain Imaging Results

An "abnormal" MRI and CT scan taken in 1994 is "suggestive of a right occipital injury that may have been quite old, but could in some way lower her threshold [to dizziness]." Tr. 681. Plaintiff contends, however, that a later MRI of her brain taken in December 1997 showed a "'dramatic interval change'" since her 1994 study, with abnormal lesions, suspicious for multiple sclerosis, in her periventricular white matter and left thalamus. Pl.'s Br. 6 (quoting Tr. 549). Plaintiff further states that her treating neurologist concluded that her MRI findings were also consistent with small vessel vascular disease. Pl.'s Br. 7. She continues: "Small vessel disease *can* cause a subcortical dementia syndrome. Personality and mood changes are frequent. Psychomotor retardation and poor judgement accompany memory deficits . . . ." Id. (emphasis added). It is crucial to note, however, that Plaintiff's physicians never diagnosed Plaintiff with small vessel disease, nor did they ever suggest that Plaintiff suffered from subcortical dementia syndrome or that she *actually* had any symptoms *caused* by either multiple sclerosis or small vessel disease. Indeed, Plaintiff's dizziness was found to be of undetermined etiology. Tr. 675. Neither the ALJ, nor this court, can rely on Plaintiff's post-decision reasoning; Plaintiff must rely, as did the ALJ, on the record as it stands at the time of the fact finder's decision. Cf. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (the applicant bears the burden of production and proof during the first four steps of the inquiry).

10

As summarized above, Plaintiff's medical records fail to reveal that Plaintiff's complaints of small right occipital lobe infarct, postural dizziness, peripheral neuropathy, anxiety, panic attacks and depression significantly limited her physical or mental abilities to perform basic work activities. See 20 C.F.R. § 404.1521(a). These records support the ALJ's finding that Plaintiff's severe impairments during the Insured Period are limited to hypertension and alcohol addiction.

2. Mental Impairment Assessment

Plaintiff next argues that the ALJ failed to utilize the psychiatric review technique mandated by 20 C.F.R. § 404.1520a ("PRT") in assessing Plaintiff's mental limitations resulting from alcohol abuse, chronic depression and anxiety. Pl.'s Br. 9-10. In cases where a claimant presents evidence that she suffers from a mental impairment, SSA regulations prescribe a "special technique" the ALJ must follow – the PRT. 20 C.F.R. § 404.1520a(a). Under the PRT, the ALJ must first evaluate the claimant's pertinent symptoms, signs, and laboratory findings to determine whether she has a medically determinable mental impairment. Id. § 404.1520a(b)(1). If so, the ALJ must rate the degree of functional limitation resulting from the impairment in four broad functional areas: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. Id. § 404.1520a(b)(2); (c)(2)-(3). If the ALJ rates the degree of limitation in the first three functional areas as "none" or "mild," and "none" in the fourth area, he generally may conclude that the impairment is not severe, unless the

11

evidence otherwise indicates that there is more than a minimal limitation in the plaintiff's ability to perform mental basic work activities. Id. § 404.1520a(d)(1).

Plaintiff seems to argue that she presented sufficient evidence of medically determinable impairments of alcohol abuse, chronic depression and anxiety during the Insured Period. Pl.'s Br. 10. Thus, according to Plaintiff, the ALJ was required to assess those impairments using the PRT described above, and failing to do so is reversible error. Id. The court finds that based on the evidence of record, there is no such error.

Regarding Plaintiff's claimed depression and anxiety, she failed to meet her burden to produce evidence showing that these were medically determinable impairments from which she suffered during the Insured Period. As discussed more fully above, there is no evidence that Plaintiff had any symptoms of either depression or anxiety during the Insured Period, and only minimal mention of any depression symptoms not associated with alcohol dependence before the Insured Period.

Regarding Plaintiff's argument that the ALJ erred in failing to apply the PRT to her impairment of alcohol dependence, the court again finds no reversible error. There are two PRT forms completed by state agency psychological consultants in

12

the record.[6]  See Tr. 315-42.  Both considered Plaintiff's history of alcohol and substance abuse addiction and found a medically determinable impairment, but both found that Plaintiff suffered no degree of functional limitation in any category; in both cases, Plaintiff's impairment was found to be non-severe.  Id.  Nevertheless, the ALJ found Plaintiff's alcohol dependence to be a severe impairment, and considered the symptoms and effects of this impairment in assessing Plaintiff's RFC and limiting her to work with no detailed instructions.  Thus, although the ALJ did not specifically discuss the PRTs in the record, any error is harmless because the ALJ found Plaintiff's limitation more severe than did the agency consultants.  See Stout v. Commissioner, 454 F.3d 1050, 1055 (9th Cir. 2006) (applying harmless error when "the ALJ's error . . . was inconsequential to the ultimate nondisability determination").

3.  RFC

Last of all, Plaintiff argues that the ALJ "ignored facts in evidence that contradicted the ALJ's conclusion."  Pl.'s Br. 12.  Specifically, Plaintiff complains that the ALJ's inference that Plaintiff's primary impediment to work in 1997 was excessive consumption of alcohol is not supported or justified by the medical evidence.  Id. 13.  Plaintiff contends that the ALJ's decision is not supported by

---

[6]  Ruling 96-6p, 61 Fed. Reg. 34466-01, explains that the state agency medical and psychological consultants "are highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the Act."  Id. at 34467.  Paragraph (f) of Section 404.1527 provides that findings of fact by these consultants become "opinions" at the ALJ and Appeals Council levels of administrative review.

13

Case 1:07-cv-00871-TDS-WWD   Document 14   Filed 05/06/10   Page 13 of 15

substantial evidence because, according to Plaintiff, he failed to adequately discuss evidence that Plaintiff's mental symptoms persisted during times there was no medical evidence that she was drinking heavily. Plaintiff further contends that evidence of symptoms, both before and after the Insured Period, that are consistent with small vessel disease should have been considered by the ALJ. Id. 15-16.

To qualify for benefits, Plaintiff must prove that she became disabled during the Insured Period. See Johnson, 434 F.3d at 655-56; 20 C.F.R. § 404.131. In other words, Plaintiff must establish that between the dates March 2, 1998, and June 30, 1999, she was unable to perform any substantial gainful activity due to a physical or mental impairment which could be expected to result in death or which lasted or could be expected to last for a continuous period of not less than twelve months. 20 C.F.R § 404.1505.

As discussed more fully above, the record evidence shows that Plaintiff was hospitalized for alcohol abuse five times between May 1997 and February 1998. Clearly, substantial evidence supports the ALJ's statement that "[i]n 1997, [Plaintiff] was hospitalized repeatedly for alcohol intoxication. The primary impediments to the claimant being able to work during this time was her excessive consumption of alcohol." Tr. 20.

Moreover, as the court discussed above, there is no *evidence* that Plaintiff actually suffered during the Insured Period from dementia resulting from small vessel disease or from long-term alcohol abuse; instead there is only Plaintiff's current

14

supposition. The fact that Plaintiff episodically complained after the Insured Period of symptoms that *may be* associated with a disease with which Plaintiff has not been diagnosed does not establish that Plaintiff suffered from this disease during the Insured Period. Cf. Cox v. Heckler, 770 F.2d 411, 413 (4th Cir. 1985) (directing remand to consider post-insured status evidence where record demonstrated that claimant had progressively deteriorating lung condition that may have reached disabling degree prior to insured status expiration).

**Conclusion and Recommendation**

For the foregoing reasons, the decision of the Commissioner is supported by substantial evidence and the correct legal principles were applied. Therefore, **IT IS RECOMMENDED** that the Commissioner's decision finding no disability be **AFFIRMED**. To this extent, Plaintiff's motion for judgment on the pleadings (docket no. 10) seeking a reversal of the Commissioner's decision should be **DENIED**, Defendant's motion for judgment on the pleadings (docket no. 12) should be **GRANTED**, and this action should be **DISMISSED** with prejudice.

_____
WALLACE W. DIXON
United States Magistrate Judge

May 6, 2010